IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BOYD TECH, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-0972 |
| | § | |
| BOYD TECH, INC. (FLORIDA) and | § | |
| EDWARD ALAN AMBLER, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Boyd Tech, Inc. ("Boyd Tech Texas," "BTI-Texas," or "Plaintiff"), filed this action on March 28, 2018, against defendants Boyd Tech, Inc. (Florida) ("Boyd Tech Florida" or "BTI-Florida") and Edward Alan Ambler ("Ambler") (collectively, "Defendants"), asserting claims for trademark infringement, unfair competition, and cyberpiracy under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), 1125(d), and common law trademark infringement and unfair competition.[1] Pending before the court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction ("Defendants' Motion to Dismiss") (Docket Entry No. 5), to which Plaintiff filed a response (Docket Entry No. 6). For the reasons stated below, the court concludes that Defendants' Motion to Dismiss should be granted.

---

[1]Original Complaint, Docket Entry No. 1, pp. 8-9.

## I.  Factual and Procedural Background[2]

Plaintiff is a Texas corporation that provides various construction consulting and advisory services.  Sam Boyd ("Boyd") is the owner of Plaintiff.  In 2014 Harvey Svetlik ("Svetlik") approached Plaintiff about developing a fluid used to encapsulate pipelines.  In 2016 Plaintiff and a Wyoming corporation produced a fluid blend that would reduce asbestos-containing dust during pip-bursting excavations and pipeline rehabilitation projects. Plaintiff marketed the fluid blend as EncapsulAC (the "Mark"). Plaintiff has used and promoted the EncapsulAC Mark on its website, encapsulac.com, at trade shows, and at meetings with contractors. In May of 2016 Boyd traveled to Florida to field test EncapsulAC. During the test Boyd met with Andrew Mayer, an owner and operator of a pipeline rehabilitation company, and with Ambler, who was also involved in the project.  On May 16, 2016, Ambler filed a patent application for a process related to pipe bursting, in which Ambler identified EncapsulAC as a dry powder formulation manufactured by Plaintiff.[3]

In September of 2016 Boyd, Ambler, Mayer, and Svetlik discussed creating a new entity for work on pipeline projects.  In November of 2016 Boyd, Ambler, Mayer, and Svetlik executed a

---

[2]See id. at 3-8 ¶¶ 15-40.

[3]United States Patent 9,890,893 ("Ambler's Patent"), Exhibit B to Original Complaint, Docket Entry 1-2, p. 9.

shareholders' agreement to govern the affairs of the new entity,
Boyd Tech Florida, and incorporated the company in Florida. The
shareholders' agreement required Boyd and Svetlik to work in Texas.
Boyd was the president of Boyd Tech Florida until March 16, 2017.
On June 2, 2017, Plaintiff filed for a federal trademark
registration for EncapsulAC with the United States Patent and
Trademark Office ("USPTO").[4] On July 21, 2017, Boyd Tech Florida
sent a cease-and-desist letter demanding that Plaintiff and Boyd
terminate applications with the USPTO related to the Mark.[5] On
November 8, 2017, Boyd Tech Florida filed for a federal trademark
registration for EncapsulAC.[6] On January 2, 2018, the USPTO
registered Plaintiff's Mark.[7] Plaintiff alleges that Ambler and
Boyd Tech Florida have created a website, encapsulac.org, that
markets the same services as Plaintiff's website, and that Ambler
and Boyd Tech Florida redirected Plaintiff's website,

---

[4]United States Patent and Trademark Office EncapsulAC
("Plaintiff's Trademark Registration"), Exhibit A to Original
Complaint, Docket Entry No. 1-1, p. 1.

[5]See Demand to Cease and Desist, Exhibit B to Defendants'
Motion to Dismiss, Docket Entry No. 5-4.

[6]Trademark/Service Mark Application, Principal Register
("Defendants' Trademark Registration"), Exhibit C to Original
Complaint, Docket Entry No. 1-3, p. 1.

[7]Plaintiff's Trademark Registration, Exhibit A to Original
Complaint, Docket Entry No. 1-1, p. 1.

encapsulac.com, to their website, encapsulac.org, without Plaintiff's permission.

## II.  Motion to Dismiss for Lack of Personal Jurisdiction

### A.  Standard of Review

Dismissal for lack of personal jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(2). When a foreign defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'" Quick Technologies, Inc. v. Sage Group PLC, 313 F.3d 338, 343 (5th Cir. 2002), cert. denied, 124 S. Ct. 66 (2003) (quoting Mink v. AAAA Development LLC, 190 F.3d 333, 335 (5th Cir. 1999)). "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" Id. at 343-344 (quoting Wilson v. Belin, 20 F.3d 644, 648 (5th Cir.), cert. denied, 115 S. Ct. 322 (1994)). "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" Id. at 344 (quoting Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985)). The court must accept as true the uncontroverted allegations in the plaintiff's complaint

-4-

and must resolve in favor of the plaintiff any factual conflicts. Guidry v. United States Tobacco Co., Inc., 188 F.3d 619, 625 (5th Cir. 1999). However, the court is not obligated to credit conclusory allegations, even if uncontroverted. Panda Brandywine Corp. v. Potomac Electric Power Co., 253 F.3d 865, 869 (5th Cir. 2001). "Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law to be determined . . . by th[e] Court." Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 418 (5th Cir. 1993).

## B.    Applicable Law

A federal district court may exercise personal jurisdiction over a nonresident defendant if "(1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009), cert. denied, 131 S. Ct. 68 (2010). Since the Texas long-arm statute extends as far as constitutional due process allows, the court considers only the second step of the inquiry. Id.

Exercise of personal jurisdiction over a nonresident defendant comports with federal due process guarantees when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction "does not offend 'traditional

-5-

notions of fair play and substantial justice.'" <u>International Shoe</u>
<u>Co. v. State of Washington, Office of Unemployment Compensation and</u>
<u>Placement</u>, 66 S. Ct. 154, 158 (1945) (quoting <u>Milliken v. Meyer</u>, 61
S. Ct. 339, 343 (1940)). Once a plaintiff satisfies these two
requirements, a presumption arises that jurisdiction is reasonable,
and the burden of proof and persuasion shifts to the defendant to
present "a compelling case that the presence of some other
considerations would render jurisdiction unreasonable." <u>Burger</u>
<u>King Corp. v. Rudzewicz</u>, 105 S. Ct. 2174, 2185 (1985). "The
'minimum contacts' inquiry is fact intensive and no one element is
decisive; rather the touchstone is whether the defendant's conduct
shows that it 'reasonably anticipates being haled into court.'"
<u>McFadin</u>, 587 F.3d at 759. "There are two types of 'minimum
contacts': those that give rise to specific personal jurisdiction
and those that give rise to general personal jurisdiction." <u>Lewis</u>
<u>v. Fresne</u>, 252 F.3d 352, 358 (5th Cir. 2001).

     1.   <u>General Jurisdiction</u>

A court may exercise general jurisdiction over non-resident
defendants "when their affiliations with the State are so
'continuous and systematic' as to render them essentially at home
in the forum State." <u>Goodyear Dunlop Tires Operations, S.A. v.</u>
<u>Brown</u>, 131 S. Ct. 2846, 2851 (2011). "Establishing general
jurisdiction is 'difficult' and requires 'extensive contacts
between a defendant and a forum.'" <u>Sangha v. Navig8 ShipManagement</u>

Private Limited, 882 F.3d 96, 101-02 (5th Cir. 2018) (quoting
Johnston v. Multidata Systems International Corp., 523 F.3d 602,
609 (5th Cir. 2008)). "For an individual, the paradigm forum for
the exercise of general jurisdiction is the individual's
domicile[.]" Daimler AG v. Bauman, 134 S. Ct. 746, 760 (2014)
(quoting Goodyear, 131 S. Ct. at 2853). "The 'paradigm' forums in
which a corporate defendant is 'at home,'. . . are the
corporation's place of incorporation and its principal place of
business." BNSF Railway Co. v. Tyrrell, 137 S. Ct. 1549, 1558
(2017) (citing Daimler, 134 S. Ct. at 760). "The exercise of
general jurisdiction is not limited to these forums; in an
'exceptional case,' a corporate defendant's operations in another
forum 'may be so substantial and of such a nature as to render the
corporation at home in that State.'" Id. (quoting Daimler, 134
S. Ct. at 761 n.19). But asserting that exceptional case is
difficult. Monkton Insurance Services, Ltd. v. Ritter, 768, F.3d
429, 432 (5th Cir. 2014). Vague allegations "that give no
indication as to the extent, duration, or frequency of contacts are
insufficient to support general jurisdiction." Johnston, 523 F.3d
at 610.

        2.   Specific Jurisdiction
    A court may exercise specific jurisdiction when the alleged
injuries arise from or are directly related to the nonresident
defendant's contacts with the forum state. Gundle Lining

-7-

Construction Corp. v. Adams County Asphalt, Inc., 85 F.3d 201, 205 (5th Cir. 1996) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S. Ct. 1868, 1872 n.8 (1984); and Quick Technologies, 313 F.3d at 344). To determine whether specific jurisdiction exists, a court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." Gundle Lining, 85 F.3d at 205. Even a single contact can support specific jurisdiction if the defendant "'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Burger King, 105 S. Ct. at 2183. "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." Ruston Gas, 9 F.3d at 419 (citing World-Wide Volkswagen Corp. v. Woodson, 100 S. Ct. 559, 567 (1980)).

There are three parts to a purposeful availment inquiry. First, only the defendant's contacts with the forum are relevant, not the unilateral activity of the plaintiff or a third party. Sangha, 882 F.3d at 103 (citing Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014) ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.")). Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. Id. (citing Walden,

134 S. Ct. at 1123). Finally, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. Burger King, 105 S. Ct. at 2183. A defendant may purposefully avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to jurisdiction there. Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 575 (Tex. 2007) (citing Burger King, 105 S. Ct. at 2181-85). Since specific jurisdiction is claim specific, "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 274 (5th Cir. 2006).

## C.  Analysis

### 1.  General Jurisdiction

Defendants argue that the court lacks general jurisdiction over Ambler because he is not domiciled in Texas and has no relevant connections to Texas, and that the court lacks general jurisdiction over Boyd Tech Florida because it is incorporated in Florida, has its principal places of business in Florida, and does not have continuous and systematic contacts in Texas that render them "at home" in Texas.[8] Defendants also argue that employing

---

[8]Defendants' Motion to Dismiss, Docket Entry No. 5, pp. 10, 12.

-9-

Boyd and Svetlik, residents of Texas, and having two shareholders who reside in Texas is not sufficient for the court to exercise general jurisdiction over Boyd Tech Florida.[9] Plaintiff responds that under the Texas long-arm statute Boyd Tech Florida was "doing business" in Texas because it contracted with Boyd and Svetlik, two Texas residents who "were both officers and constituted 50% of BTI-Florida's workforce," and because Boyd Tech Florida committed a tort in Texas.[10] Plaintiff does not dispute Defendants' argument that the court lacks general jurisdiction over Ambler, and does not argue or cite any case law demonstrating how the court could exercise general jurisdiction over Boyd Tech Florida under the constitutional due process analysis.

Because Texas is not Ambler's domicile and because Plaintiff does not dispute that the court lacks general jurisdiction over him, the court concludes that Plaintiff has not met its burden to establish that the court has general jurisdiction over Ambler. Because Boyd Tech Florida's place of incorporation and principal place of business are in Florida, to exercise general jurisdiction the facts must establish an "exceptional case." See BNSF, 137 S. Ct. at 1558; Patterson v. Aker Solutions Incorporated, 826 F.3d 231, 234 (5th Cir. 2016). At all relevant times Boyd Tech Florida maintained its place of incorporation and principal place of

_____

[9]Id. at 12.

[10]Plaintiff's Response, Docket Entry No. 6, pp. 25-26 and n.7.

business in Florida.[11]  Merely employing residents of the forum

state is not sufficient to establish general jurisdiction over a

corporate defendant.  See BNSF, 137 S. Ct. at 1559 (holding that

the court lacked general jurisdiction even though the defendant

employed more than 2,000 employees in the forum state).  Although

Plaintiff alleges that "one-half of BTI-Florida's workforce"

resided in and performed their duties in Texas,[12] those contacts do

not amount to an exceptional circumstance that would permit the

court to exercise general jurisdiction over Boyd Tech Florida.  The

paradigm forums in which a corporation is at home are the

corporation's place of incorporation and its principal place of

business, not the residence of corporate officers.  The general

jurisdiction inquiry "calls for an appraisal of a corporation's

activities in their entirety."  Daimler, 134 S. Ct. at 762.

Plaintiff has not alleged facts that establish that Boyd Tech

Florida's contacts in Texas are so substantial and of such nature

as to render the corporation at home in Texas.  Id. at 761 n.19.

Although Plaintiff argues that the Texas long-arm statute allows

the court to exercise general jurisdiction over Boyd Tech Florida,

even if it does, the exercise of personal jurisdiction would be

inconsistent with the due process clause of the Fourteenth

Amendment.  The court concludes that this is not the exceptional

_____

[11]Original Complaint, Docket Entry No. 1, p. 1 ¶ 2.

[12]Plaintiff's Response, Docket Entry No. 6, p. 25.

case that would allow the court to exercise general jurisdiction over Boyd Tech Florida in a forum that is not its place of incorporation or principal place of business.

### 2. Specific Jurisdiction

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear, 131 S. Ct. at 2851 (citations and quotations omitted). Defendants argue that Plaintiff has failed to present any basis for specific jurisdiction over Ambler or Boyd Tech Florida.[13] Because specific jurisdiction is claim specific, the court ordinarily determines whether the plaintiff has established specific jurisdiction for each claim. Seiferth, 472 F.3d at 274. Plaintiff has brought claims for trademark infringement, unfair competition, and cyberpiracy under the Lanham Act, and trademark infringement and unfair competition under Texas common law.[14] The Cyberpiracy Protection Act, Section 43 of the Lanham Act, 15 U.S.C. § 1125(d), states that a person is liable who, with bad faith intent to profit from a protected mark, "registers, traffics in, or uses a domain name that . . . is identical or confusingly similar to that mark." 15 U.S.C. § 1125(d)(1)(A). Because the cyberpiracy claim is premised on

---

[13]Defendants' Motion to Dismiss, Docket Entry No. 5, pp. 7-11.

[14]Original Complaint, Docket Entry No. 1, pp. 8-9 ¶¶ 41-56.

unauthorized use of a protected mark, for purposes of personal jurisdiction, the analysis is substantially similar to the analysis for trademark infringement and unfair competition under the Lanham Act. And "[a] trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions." Amazing Spaces, Inc. v. Metro Mini Storage, 608 F.3d 225, 235 n.7 (5th Cir. 2010) (internal citations and quotations omitted). Therefore, although the court will only refer to "trademark infringement," the following analysis applies to all of Plaintiff's claims.

      a.   The Court Lacks Specific Jurisdiction Over Ambler

Defendants argue that the court does not have specific jurisdiction over Ambler because Plaintiff has not pled an alter ego theory and therefore the contacts of Boyd Tech Florida may not be attributed to its owners, because the contact created by Ambler's alleged signing of a trademark application on behalf of Boyd Tech Florida would be attributed to the company, and because Ambler did not operate Boyd Tech Florida's website, encapsulac.org, and even if he did, the website sells no goods or services to or from Texas.[15]  Plaintiff responds that the court has specific

---

[15]Defendants' Motion to Dismiss, Docket Entry No. 5, pp. 12-13.

jurisdiction over Ambler because he is a controlling person of Boyd Tech Florida who directed tortious conduct at Texas.[16]

The court must first determine whether Ambler purposefully established minimum contacts with Texas such that he should reasonably anticipate being haled into court there. Under the "fiduciary-shield doctrine . . . an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual . . . ." Stuart v. Spademan, 772 F.2d 1185, 1197 (5th Cir. 1985). "While the general rule is that jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation, courts have recognized an exception to this rule when the corporation is the alter ego of the individual." Id. Because Plaintiff has not pled facts establishing that Ambler is the alter ego of Boyd Tech Florida, Boyd Tech Florida's activities in Texas may not be imputed to Ambler.

Plaintiff alleges that "Ambler is the individual who has directed the infringing activities on behalf of BTI-Florida."[17] Specifically, Plaintiff alleges that Ambler "signed the application to register Plaintiff's mark on behalf of BTI-Florida"[18] and argues

---

[16]Plaintiff's Response, Docket Entry No. 6, p. 19.

[17]Original Complaint, Docket Entry No. 1, p. 3 ¶ 11.

[18]Id.

-14-

that "as president, he would also have controlled, or at least had the ability to control, the drafting and transmittal of the cease-and-desist letter."[19]   Because the fiduciary-shield doctrine prohibits attribution of corporate acts to corporate officers, Ambler's contacts to Texas based on actions taken in his corporate capacity do not confer the court with personal jurisdiction over him.   The court therefore concludes that Ambler's signing of the trademark application and his involvement, if any, in sending the cease-and-desist letter was done in his corporate capacity and therefore cannot support specific jurisdiction.[20]

Plaintiff's only allegation of Ambler's conduct that was not taken on behalf of Boyd Tech Florida is that "Ambler individually caused or directed to be caused the redirection of Plaintiff's encapsulac.com website . . . to BTI-Florida's encapsulac.org website."[21]   Citing Zippo Mfg. Co. v. Zippo Dot Com, Inc., 925 F. Supp. 1119, 1124 (W.D. Pa. 1997), Defendants argue that Boyd Tech Florida's website is a passive website that has no connection to

---

[19]Plaintiff's Response, Docket Entry No. 6, p. 21.

[20]See Defendants' Trademark Registration, Exhibit C to Original Complaint, Docket Entry No. 1-3, pp. 1, 5.   The application indicates that Boyd Tech, Inc. Florida is the applicant, and that the signatory "believes that the applicant is entitled to use the mark in commerce."   Ambler signed the application under his position as "President."

[21]Original Complaint, Docket Entry No. 1, p. 3 ¶ 12.

Texas and therefore cannot establish jurisdiction.[22]   Plaintiff responds that Ambler's attacks on Plaintiff's website was a purposeful tort directed at Texas because "a party attempting to visit BTI-Texas's website, marketing BTI-Texas's services, provided from its office in Texas, was instead transported to BTI-Florida's website offering infringing materials."[23]   Plaintiff also argues that the Zippo analysis is irrelevant because "[w]hile Plaintiff does allege that 'encapsulac' as used on Defendant's website is infringing, the [Zippo] test is irrelevant to the issue of the undisputed purposeful redirection of Plaintiff's Texas website to BTI-Florida's website described above."[24]

Plaintiff does not allege a cause of action against Defendants for the alleged redirection itself.   Plaintiff uses the alleged redirection of its website as Ambler's purposeful forum-related contact to support personal jurisdiction.   To meet its burden, Plaintiff must establish that the underlying causes of action arise out of that contact.   Luv N' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 473 (5th Cir. 2006).   To determine whether redirection of Plaintiff's website is a forum-related contact that constitutes purposeful availment of the privileges of conducting business in Texas, and whether that contact gives rise to Plaintiff's causes of

_____

[22]Defendants' Motion to Dismiss, Docket Entry No. 5, p. 13.

[23]Plaintiff's Response, Docket Entry No. 6, p. 22.

[24]Id.

action, the court must examine case law on personal jurisdiction based on website use and based on trademark infringement.

(i)  **Personal Jurisdiction Based on Website Activities**

The Fifth Circuit has adopted the reasoning in <u>Zippo</u> to determine personal jurisdiction based on online interactions on an internet website. <u>Mink</u>, 190 F.3d at 336 ("We find that the reasoning of <u>Zippo</u> is persuasive and adopt it in this Circuit").

> The <u>Zippo</u> decision categorized Internet use into a spectrum of three areas. At the one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which involve the knowing and repeated transmission of computer files over the Internet. In this situation, personal jurisdiction is proper. At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet. With passive websites, personal jurisdiction is not appropriate. In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website.

<u>Id.</u> (internal citations and quotations omitted). In <u>Mink</u> the Fifth Circuit held that although the defendant's website "provide[d] users with a printable mail-in order form, [the defendant's] toll-free telephone number, a mailing address and an electronic mail ("e-mail") address, orders are not taken through [the defendant's] website. This does not classify the website as

anything more than passive advertisement which is not grounds for the exercise of personal jurisdiction." Id. at 337.

### (ii) Personal Jurisdiction in Trademark Infringement Cases

Although some circuits apply the "effects test" from Calder v. Jones, 104 S. Ct. 1482 (1984), to determine whether they have specific jurisdiction over defendants in trademark infringement cases, see e.g. Dakota Industries, Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1390-91 (8th Cir. 1991); Licciardello v. Lovelady, 544 F.3d 1280, 1286 (11th Cir. 2008), the Fifth Circuit has not applied the test in trademark disputes. Instead, the Fifth Circuit has used a "stream-of-commerce" inquiry. See Luv N' Care, 438 F.3d at 472-73 ("This court has been reluctant to extend the stream-of-commerce principle outside the context of products liability cases . . . Nevertheless, we have found jurisdiction where the same public policy concerns that justify use of stream-of-commerce principle . . . are present.") (internal citations and quotations omitted). In Luv N' Care, the Fifth Circuit held that the defendant had purposefully availed itself of the privileges of conducting business in the forum state when it placed the infringing products into the stream of commerce and knew that the product would reach the forum state. Id. at 470. The court also held that the plaintiff's claims arose out of the defendant's contacts with the forum state because its infringement claims

-18-

involved "the same [product] that traveled through the stream of commerce from Colorado to [the forum state]." <u>Id.</u> at 473. Therefore "[t]his connection between the allegedly infringing product and the forum state [was] sufficient to confer personal jurisdiction." <u>Id.</u>

### (iii) Personal Jurisdiction Based on Trademark Use on Websites

<u>Quick Technologies</u> provides some guidance on the intersection of websites and trademarks for purposes of personal jurisdiction. There, the Fifth Circuit held that the plaintiff's claims for trademark infringement and unfair competition did not "arise out of or relate to" the defendant's use of a registered mark. <u>Quick Technologies</u>, 313 F.3d at 345. The court explained that

> [the defendant] had used the mark SAGE in advertisements placed in publications which circulate in the United States. Generally, advertisements are insufficient to establish personal jurisdiction. <u>See</u> <u>Singletary v. B.R.X., Inc.</u>, 828 F.2d 1135, 1136-37 (5th Cir. 1987) (concluding that advertisements did not establish personal jurisdiction where there was no evidence that the "claim arose out of or was related to" the advertisements). Second, [the defendant's] operation of a website containing company and product information and links to its U.S. subsidiaries also does not provide sufficient grounds for the exercise of personal jurisdiction. <u>See</u> <u>Mink</u>, 190 F.3d at 337 (finding that a website that is nothing more than a "passive advertisement," i.e. a website that provides product information, toll-free telephone numbers, e-mail addresses, mail addresses, and mail-in order forms, does not support the exercise of personal jurisdiction).

<u>Id.</u> In <u>Mid City Bowling Lands & Sports Palace, Inc. v. Ivercrest, Inc.</u>, 208 F.3d 1006 (Table), 2000 WL 178135 at *1 (5th Cir. 2000),

the Fifth Circuit held that the plaintiff's allegation that it suffered injury in the forum state based on the defendant's use of the plaintiff's trademark in a passive website and in other advertisements targeted at an audience outside the forum state, was insufficient to support the exercise of specific jurisdiction.

### (iv) Analysis

Defendants' website, encapsulac.org, "does not target any state or make products or services available for direct purchase."[25] Plaintiff does not dispute that Defendants' website is a passive website. Even though Plaintiff alleges that Defendants' website displayed the Mark and used the Mark as its domain name, the website merely advertises products. This is not enough to permit personal jurisdiction. See Quick Technologies, 313 F.3d at 345; Healix Infusion Therapy, Inc. v. Human Arc Corp of Ohio, Civil Action No. H-08-3262, 2009 WL 7326369, at *6-7 (S.D. Tex. July 13, 2009) ("merely registering someone else's trademark as a domain name and posting a website on the Internet, without more, is not sufficient to subject a party domiciled in one state to jurisdiction in another."). Because Defendants' website is a passive website that does not allow viewers to enter into contracts with them, Defendants have not, by means of their website, directed any infringing material at Texas or Texas residents, or otherwise placed infringing material into a stream of commerce for the

---

[25]Declaration of Edward Alan Ambler, Exhibit A to Defendants' Motion to Dismiss, Docket Entry No. 5-3, p. 4 ¶ 12.

purpose of reaching Texas. Therefore, the Defendants' website does not allow the court to exercise personal jurisdiction over them.

Plaintiff argues that personal jurisdiction over Ambler is not premised on the use of infringing marks on Defendants' website, but on Ambler's redirection of Plaintiff's website to Defendants' website.[26] Because Defendants' website is a passive website that does not direct infringing materials at Texas, and because Plaintiff does not contend that its website is an interactive website that would by itself allow a federal court in Texas to exercise specific jurisdiction over Plaintiff,[27] Ambler's alleged redirection from one passive website to another passive website is not sufficient to show that Ambler purposefully availed himself of the privileges of conducting business in Texas. Because both websites are passive, and because Plaintiff has not alleged that Ambler has sent emails, letters, products, or other communications bearing the Mark to Texas residents, Plaintiff has failed to establish that Ambler directed an act toward Texas or otherwise purposefully availed himself of the privilege of conducting activities in Texas. Therefore the court concludes that it cannot exercise specific jurisdiction over Ambler.

---

[26]Plaintiff's Response, Docket Entry No. 6, p. 22.

[27]See Original Complaint, Docket Entry No. 1, p. 3 ¶ 12 (". . . Plaintiff's encapsulac.com website, which promotes and markets Plaintiff's business in Texas to the world, . . .").

b.    The Court Lacks Specific Jurisdiction Over Boyd
              Tech Florida

Defendants argue the court does not have specific jurisdiction

over Boyd Tech Florida because "[t]he allegation that Florida and

Texas individuals formed Boyd Tech Fla. to operate in Florida is

completely unrelated to the allegations of trademark infringement

in the complaint" and because the cease-and-desist letter sent by

Boyd Tech Florida to Boyd "did not relate to the infringement of

*Plaintiff's* alleged trademark rights" and therefore do not relate

to the merits of the claim.[28]  Defendants also argue that any injury

felt by Plaintiff in Texas is not sufficient for specific

jurisdiction.[29]  Plaintiff responds that the cease-and-desist letter

was directed at Plaintiff and related to Plaintiff's intellectual

property, and that Boyd Tech Florida's redirection of Plaintiff's

website confers personal jurisdiction.[30]

        Plaintiff argues that the Calder effects test applies to its

trademark infringement claims and that "Plaintiff has alleged

intentional business torts and has alleged that the brunt of the

harm will be felt by Plaintiff in the forum."[31]  Such "effects"

jurisdiction is rare.  Moncrief Oil International Inc. v. OAO

Gazprom, 481 F.3d 309, 314 (5th Cir. 2007).  If the test applied,

---

[28]Defendants' Motion to Dismiss, Docket Entry No. 5, pp. 14-15.

[29]Id. at 15.

[30]Plaintiff's Response, Docket Entry No. 6, pp. 15-16, 18.

[31]Id. at 12.

the "foreseeable effects of a tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum." Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 212 (5th Cir. 1999) (internal citation and quotation omitted). As explained in II.C.2.a.(ii), above, under Fifth Circuit authority the effects test does not apply to Plaintiff's claims. Even if it did, Plaintiff must still show that Boyd Tech Florida directed specific acts towards Texas.

Plaintiff relies on SGS-Thomson Micro-Electronics, Inc. v. Ferris, 55 F.3d 632, 1995 WL 313932 (5th Cir. 1995), to argue that sending a cease-and-desist letter alleging trademark infringement is enough to confer personal jurisdiction over the sender.[32] However in Thomson, the contents of the letter gave rise to the plaintiff's causes of action for tortious harassment, extortion, and defamation. Id. at *2. Here, although the letter was directed at Plaintiff, mentions EncapsulAC, and informs Plaintiff that it breached the shareholders agreement, Plaintiff's claims of trademark infringement and unfair competition do not arise out of the letter's contents. In the letter Defendants put Boyd "on formal notice of your blatant and intentional breaches of the Boyd Tech, Inc. (Florida) Shareholders Agreement"[33] and ask Boyd to "terminate any and all applications you submitted which are

---

[32]Id.

[33]Demand to Cease and Desist, Exhibit B to Defendants' Motion to Dismiss, Docket Entry No. 5-4, p. 2.

currently pending with the USPTO as they relate to our client's licensed product, EncapsulAC."[34]

Whether Defendants correctly assert their claims of breach of contract and their rights to the licensed product is irrelevant -- the mere act of asserting rights through a cease-and-desist letter does not subject Defendants to specific jurisdiction in the forum to which the letter was sent. See, e.g., Ham v. La Cienega Music Co., 4 F.3d 413, 416 & n.14 (5th Cir. 1993) (citing Cascade Corp v. Hiab-Foco AB, 619 F.2d 36 (9th Cir. 1980)); Axxess Technology Solutions Inc. v. Epic Systems Corp., Civil Action No. 3:16-02893-N, 2017 WL 3841604 at *3 n.1 (N.D. Tex. Jan. 23, 2017) ("It is established that sending cease and desist letters is insufficient to establish personal jurisdiction.") (citing Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1360-61 (Fed. Cir. 1998)). "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." Wien Air Alaska, 195 F.3d at 213. Boyd Tech Florida's alleged appropriation of Plaintiff's EncapsulAC Mark is the conduct that gives rise to Plaintiff's causes of action of trademark infringement and unfair competition. Plaintiff asserts no claim based on the content of the cease-and-desist letter.

---

[34]Id. at 5.

Plaintiff also argues that Boyd Tech Florida's redirection of Plaintiff's website establishes personal jurisdiction over Boyd Tech Florida. For the same reasons that the court has concluded that this conduct does not establish specific jurisdiction over Ambler, the court concludes that this conduct does not establish specific jurisdiction over Boyd Tech Florida.

The court therefore concludes that Plaintiff has failed to allege facts sufficient to allow the court to exercise specific jurisdiction over Defendants. Because the court concludes that it may not exercise personal jurisdiction over Defendants, it need not decide whether it is fair and reasonable to require a Defendants to litigate in Texas.[35]

### III. Conclusions and Order

For the reasons explained above, the court concludes that Plaintiff has failed to meet his burden of establishing facts capable of supporting the court's exercise of personal jurisdiction over Defendants. Accordingly, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry No. 5) is **GRANTED**, and

---

[35]In its Response Plaintiff states, "[i]f Court finds insufficient minimum contacts to support the exercise of personal jurisdiction over BTI-Florida or Ambler, BTI-Texas requests an opportunity to conduct jurisdictional discovery." Because the perfunctory request does not explain what discovery is necessary or how plaintiff expects the discovery would change the outcome, the court **DENIES** Plaintiff's request for jurisdictional discovery.

this action will be dismissed without prejudice for lack of personal jurisdiction.

     **SIGNED** at Houston, Texas, on this the 25th day of July, 2018.

                               SIM LAKE
                  UNITED STATES DISTRICT JUDGE